IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LEE ANN ALLEN,<br><br>             Plaintiffs,<br><br>vs.<br><br>CH2M-WG, IDAHO, LLC and<br>BARTLETT SERVICES, INC.,<br><br>             Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No.  4:08cv422-REB |

       This matter is before the court[1] on Defendant Bartlett Services, Inc.'s Motion to Dismiss or in the Alternative for Judgment on the Pleadings, and Defendant CH2M-WG-Idaho's ("CWI") Motion to Stay Proceedings Pending Resolution of Administrative Process.  The court held a telephonic hearing on these motions on May 20, 2009.  At the hearing, Plaintiff was represented by Stephani L. Ayers, Defendant Bartlett was represented by Larry J. Rappoport and Bradley J Williams, and Defendant CWI was represented by William A. Wright and Dennis A. Love.  The court took the motions under advisement.  After carefully considering the memoranda and materials submitted by the parties, the arguments made at the hearing on the motions, as well as the law and facts relevant to the pending motions, the court renders the following Memorandum Decision and Order.

---

    [1] The United States District Court for the District of Idaho assigned this matter to Judge Dale A. Kimball, United States District Judge, District of Utah, while he was sitting by special designation in the District of Idaho.

## BACKGROUND

Plaintiff Lea Allen claims that she was discriminated against in retaliation for activities protected from discrimination by the Energy Reorganization Act ("ERA"), including "safety and health concerns regarding nuclear operations, processes, and personnel at the Idaho National Laboratory." Plaintiff further alleges, under Idaho common law, that Defendants wrongfully terminated her employment in violation of public policy and that Defendants breached the covenant of good faith and fair dealing.

Allen refers to both Defendants as her former joint employers. Allen worked for CWI at its Accelerated Retrieval Project ("ARP") at the Radioactive Waste Management Complex. CWI is the Idaho Cleanup Project contractor for the United States Department of Energy at the Idaho National Laboratory site. CWI began work under a 7-year contract with the Department of Energy in May of 2005.

Defendant Bartlett Services is a company that operates as a staffing agency to the nuclear industry and provides nuclear-related professional and technical services. Bartlett contracted with CWI to provide staff to CWI from June 7, 2006 to September 30, 2008, the date of Allen's termination. As of June 8, 2006, Bartlett began processing Allen's checks and performing other administrative tasks. In its Answer, filed the same date as the present Motion to Dismiss, Bartlett denied that it was Allen's "joint employer."

Prior to filing her Complaint in this court, on September 18, 2006, Allen filed an administrative complaint under the ERA. This administrative complaint was based on alleged adverse actions Defendants took against Allen prior to her termination. The Department of Labor ("DOL"), the entity who investigates and considers administrative complaints brought under the ERA, did not act on Allen's pre-termination claims.

After the present action was filed, on March 6, 2009, Allen filed an administrative complaint relating to her termination with the DOL. The court is not aware of any action that the DOL has taken on the second administrative complaint.

## DISCUSSION

### Bartlett's Motion to Dismiss

Bartlett brings the present motion to dismiss on the grounds that it does not qualify as Allen's "joint employer" as a matter of law. In the Ninth Circuit, the issue of whether a defendant qualifies as a "joint employer" is an issue of law determined by the court. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983) ("Although the underlying facts are reviewed under the clearly erroneous standard, the legal effect of those facts – whether appellants are employers within the meaning of the FLSA – is a question of law.").

Courts have long-recognized that two or more entities may function as a joint employer for purposes of liability for violations of the federal employment laws. *See id.* at 1469. "[T]he 'joint employer' concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment." *EEOC v. Pacific Maritime Ass'n*, 351 F.3d 1270, 1277 (9th Cir. 2003). The Ninth Circuit defines the "essential terms and conditions of employment" using *Bonnette*'s "economic realities" test. Under this test, the court must evaluate the "circumstances of the whole activity" and, in particular, whether the alleged employer: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Bonnette*, 704 F.2d at 1470.

The Ninth Circuit's totality of the circumstances and economic reality test recognizes that

whether or not a joint employment relationship exists is not determined by the application of any single criterion but, rather, the relationship viewed in its totality. *See Moreau*, 356 F.3d at 949. In *Moreau*, the court found that the company was not a joint employer because it did not have the ability to hire and fire employees, did not determine the rate or method of pay, did not keep employment records, did not set or control the employees' work schedules, or working conditions. *Id.*

Recently, this court ruled that "joint liability is not established simply because a parent company provides various organizational services for its members companies, like payroll services." *Buttars v. Creekside Home Health*, 2008 WL 4411414 (D. Idaho Sept. 25, 2008). In reaching its decision, the court focused on whether the company "(1) supervised Creekside employees; (2) had the authority to hire and fire Creekside employees, (3) had the authority to discipline Creekside employees; and (4) supervised the Creekside worksite." *Id.* at *2. The court concluded that the tasks performed by Alpine, including payroll and other administrative functions, were "simply organizational tasks that one company can provide for another to take advantage of the economies of scale, and *Anderson* specifically rejected an argument that they count toward a finding of joint liability." *Id.* at *3.

The United States Department of Labor ("DOL"), which is the agency responsible for construing and promulgating rules for the ERA, also has precedents outlining factors for determining whether a company is a joint employer. In *Williams v. Lockhead Martin Energy Systems, Inc.,* ARB No. 98-059, ALJ No. 1995-CAA-10 (ARB Jan. 31, 2001), the DOL examined the following factors in determining whether the company was a joint employer: (1) the company employs the complainant or has a contract with him; (2) the company manages or supervises complainant or his work; (3) the company has any right to assign work to the

complainant; (4) the company pays complainant or pays his or her benefits; (5) the company withholds taxes on complainant's behalf; (6) the company evaluates complainant's performance; or (7) the company has the authority to terminate complainant. *Id.* at 9-10.

In *Culligan v. American Heavy Lifting Shipping Co.*, 2004 WL 1475517, ARB Case No. 03-046 (June 30, 2004), the DOL also stated:

> In establishing an employer-employee relationship, the crucial factor is whether the respondent acted in the capacity of an employer, that is, exercised control over, or interfered with, the terms, conditions, or privileges of the complainant's employment. Such control . . . includes the ability to hire, transfer, promote, reprimand, or discharge the complainant, or to influence another employer to take such actions against a complainant.

*Id.* at *10.

Bartlett contends that while Allen identifies it as her joint employer, the allegations of the First Amended Complaint do not support this contention as a matter of law. Allen argues that given the fact-intensive inquiry required in assessing joint employer status, Bartlett is unable to cite to any cases from the Ninth Circuit or the District of Idaho where the court granted a motion to dismiss on the issue of joint employer status. This issue is typically resolved and addressed on summary judgment after a plaintiff has had the opportunity of conducting discovery. *See, e.g., Moreau v. Air France*, 356 F.3d 942 (9th Cir. 2003) (noting that even on appeal, the inquiry is "necessarily fact specific").

Allen's First Amended Complaint repeatedly refers to Defendants in the plural. Paragraph 13 of the First Amended Complaint alleges that:

> Plaintiff Allen was employed by Defendants CWI and Bartlett at the Idaho National Laboratory. Defendant CWI supervised and controlled Plaintiff's on-site work and conditions of employment, including providing daily assignments and direction for work activities, and setting Plaintiff's work schedule and location.

> Defendant CWI was responsible for providing the necessary work-related training and work resources and equipment to Plaintiff. Defendant Bartlett processed her paycheck and handled other administrative tasks for Plaintiff and the other personnel that it provides to Defendant CWI.

Bartlett contends that nowhere in the First Amended Complaint does Allen plead sufficient facts to establish the control necessary for the creation of the joint employer relationship. By Allen's own admission, Bartlett did not supervise or assign her daily tasks. Bartlett also contends that Allen did not report to any Bartlett personnel and no Bartlett employees had any control over Allen.

While Bartlett asserts that CWI exclusively controlled Allen, Bartlett ignores the allegations in the First Amended Complaint that Bartlett had the authority to hire and fire her, set the rate of her pay, respond to and address her nuclear safety concerns, and affect the terms and conditions of her employment. The Complaint alleges that Bartlett assigned her to her work with CWI, Bartlett had the power and/or authority to alter her income and the terms of her benefits, and Bartlett's agents and employees, Britten and Fowler, had the power and/or authority to dictate Allen's location and manner of performing duties. *See Western Truck Manpower v. United States Dep't of Labor*, 12 F.3d 151, 152 (9th Cir. 1993) (leasing agency and company that leased driving services were joint employers when one company provided employees to the other).

Allen further alleges that because Bartlett provided a mechanism for receiving employee complaints about the work environment, Bartlett held itself out as having the power and/or authority to remedy violation of employee rights, including the ability to punish violators. Allen contends that she reported a number of radiological concerns to or about the actions of Bartlett's agents or employees, specifically Bartlett's ARP Radiological Control Supervisor and ARP

Radiological Controls Manager.  Plaintiff claims that as some of the recipients of her protected disclosures were Bartlett employees or agents, the reasonable inference is that Bartlett had the power and/or authority to investigate her concerns and take remedial actions.

Moreover, the Complaint states that a motivating factor in Allen's termination of employment was Defendants' consideration of Allen's protected activity.  Thus, Allen alleges that she made the complaint to Bartlett personnel and Bartlett personnel were involved in the determination to terminate her employment.  The reasonable inference from the statement that both Defendants terminated her is that both Defendants had the power and/or authority to do so.

At the motion to dismiss stage, Allen is entitled to all reasonable inferences in the Complaint.  Unlike *Buttars*, Allen has alleged that Bartlett had more control over her conditions of employment than merely processing payroll.  The plaintiff in *Butters*, who was at the summary judgment stage, was not able to point to facts that demonstrated that the defendant company had firing or hiring authority or the ability to affect the terms and conditions of employment.  The court concludes that Allen has adequately alleged sufficient facts to allow discovery to proceed.  Allen is entitled to discovery to more fully understand the relationship between Bartlett and CWI.  Accordingly, the court denies Bartlett's motion to dismiss.

**CWI's Motion to Stay Proceedings Pending Resolution of Administrative Proceedings**

CWI's motion to stay asks the court to stay the proceedings in this matter to permit Allen to exhaust administrative remedies for her retaliatory discharge claim under the Energy Reorganization Act ("ERA"), 42 U.S.C. § 5851.  The ERA directs complaints under the ERA to be filed with the Department of Labor.  *Id.* § 5851(b)(1).  Although CWI argues that there are grounds for dismissing Allen's claim for filing the instant complaint prior to her exhaustion of remedies, CWI asks only that the court exercise its discretion to stay the action pending Allen's

exhaustion of administrative remedies.

Allen's First Amended Complaint alleges various adverse actions by Defendants against Allen that ultimately resulted in her termination all of which she alleges were in retaliation for her activities which were protected from discrimination by the ERA.  Allen's activities included "safety and health concerns regarding nuclear operations, processes, and personnel at the Idaho National Laboratory" where she was employed.  Because of the extended time period involved with the alleged adverse actions,  Allen's ERA claims in this case involve essentially two sets: (1) alleged adverse actions occurring between 2005 and 2007 that Allen previously presented to DOL and were not acted upon within one year ("pre-termination claims"); and (2) a 2008 termination claim currently pending with the DOL ("termination claim").

The ERA provides:

> If the Secretary has not issued a final decision within 1 year after the filing of a complaint . . .  and there is no showing that such delay is due to bad faith of the person seeking relief . . . , such person may bring an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.

42 U.S.C. § 5851(b)(4).

CWI contends that the ERA gives exclusive jurisdiction of complaints to the DOL for a period of up to one year and Allen cannot bring her ERA retaliatory discharge claim to court prior to the DOL's consideration of the complaint.  Allen argues that neither the language of Section 5851(b)(4) nor any case law appears to support a conclusion that Section 5851(b)(4) makes exhaustion of administrative remedies a jurisdictional prerequisite to bringing suit in a district court.

CWI  relies on *Newport v. United States Dept. of Labor*, 2009 WL 973201 (W.D. Mo.

April 9, 2009), in which the court dismissed an ERA petition for lack of jurisdiction because the plaintiff sought a writ of mandamus in the district court when a direct appeal to the court of appeals was the more appropriate procedure under the ERA. *Id.* at *3. But the *Newport* case is factually distinguishable from the instant case because the DOL had issued an order on the complaint prior to the plaintiff's filing of the complaint in district court. Under the statutory scheme created in the ERA, an appeal of an order of the DOL goes to the court of appeals rather than the district court. *See* 42 U.S.C. § 5851(c). However the ERA also contains a provision for a writ of mandamus to enforce any nondiscretionary duty imposed by the statute. *See id.* § 5851(f). In the *Newport* case, the plaintiff brought a writ of mandamus in district court instead of appealing the DOL's order to the court of appeals as directed by the ERA. *Id.* at *2. When the *Newport* court found that the plaintiff had not "exhausted all other avenues of relief," the court was distinguishing between when a writ of mandamus should be brought under 42 U.S.C. § 5851(f) and when a regular appeal to the court of appeals should be brought under Section 5851(c). *See id.* at *3. The *Newport* court was not determining whether there is a jurisdictional requirement of exhausting administrative remedies prior to bringing an action in district court under § 5851(b)(4).

CWI also cites to a Ninth Circuit case reviewing the Telecommunications Act of 1934, which reasoned that it follows from "the inclusion of a judicial review provision in the same statutory section describing the administrative proceedings . . . that Congress expected administrative proceedings generally to come to a close before institution of proceedings in a district court." *Western Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1201-02 (9th Cir. 2008). The *Western Radio* court was admittedly reviewing "an unusual-probably unique-statutory scheme." *Id.* at 1197. The Telecommunications Act statutory scheme is significantly

different from the scheme provided under the ERA.  Moreover, the language cited from *Western Radio* was stated in relation to the application of the doctrine of primary jurisdiction, not in determining a jurisdictional issue.  *See id.* at 1202.

The court concludes that neither the statute nor case law mandate a dismissal or stay of the present case on jurisdictional grounds.  The ERA provides that a plaintiff may bring an action in district court if the DOL has not acted on a complaint within one year.  CWI, however, also argues that the court should stay the case based on the doctrine of primary jurisdiction.

For purposes of the present case, the most relevant discussion in *Western Radio* relates to prudential exhaustion requirements and the doctrine of primary jurisdiction.  Both parties agree that the doctrine of primary jurisdiction gives the court discretion to dismiss or stay an action in order to protect "the integrity of a regulatory scheme."  *Syntek Semiconductor Co. v. Microchip Technology Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).  The doctrine of primary jurisdiction is prudential in nature, giving the court the discretionary authority to refer an issue to the appropriate agency for initial resolution.  *Syntek*, 307 F.3d at 780.  If a court finds that an agency has primary jurisdiction over an issue, it may either stay or dismiss the proceedings pending administrative review.  *Far E Conference v. United States*, 342 U.S. 570, 576-77 (1952).  "No fixed formula exists for applying the doctrine of primary jurisdiction."  *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956).

The doctrine of primary jurisdiction has two principal purposes.  First primary jurisdiction recognizes and allows a court to make use of "the expert and specialized knowledge of the agencies involved."  *Id.*  Second, the doctrine promotes "desirable uniformity" by allowing an agency to make certain types of administrative decisions.  *Id.*

In determining whether the doctrine of primary jurisdiction applies, courts "have

traditionally employed such factors as (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.* This court, therefore, must examine the statutory scheme provided for in the ERA to determine whether the doctrine of primary jurisdiction should apply in this case.

The ERA provides for regulation of the nuclear industry. *See* 42 U.S.C. §§ 5801, 5842 (2003 & Supp. 2008). Under the ERA, complaints of retaliatory conduct must be filed with the DOL. *Id.* § 5851(b)(1). The DOL investigates the complaint and, if it finds merit, may order relief for the complainant. *Id.* § 5851(b)(2). During the investigation, the DOL must determine whether the complainant engaged in protected activity, whether the activity was a contributing factor to an adverse employment decision, and whether the employer would have taken the same personnel action in the absence of the activity. *Id.* § 5851(b)(3).

The ERA also provides several avenues for bringing actions in court. For example, if the DOL issues an order adverse to the complainant, the complainant may appeal to the court of appeals. *Id.* § 5851(c)(1). Also, a complainant may bring an action in district court to enforce the order. *Id.* § 5851(f). When the DOL fails to take any action within one year, the complainant may bring an action in district court. *Id.* § 5851(b)(4).

CWI contends that the DOL has specialized expertise under the ERA to determine the issue of whether Allen's complaints were protected activity under the statue. CWI also argues that the DOL can bring consistency to the application of the ERA. Thus, CWI asks that the court stay proceedings, with an exception for allowing the mediation currently being scheduled to proceed.

Allen argues that the practical effect of the rule CWI seeks with the present stay is to deny the employee the judicial review made available by Congress until the last stage–termination–is resolved by the DOL.  Allen contends that Congress did not intend for the administrative process to delay proceedings to this extent.

This case presents interesting and difficult issues because of the separate claims of adverse action and the ERA's judicial review provisions.  The ERA's judicial review provisions direct some actions to be brought in district court and some actions to be brought directly in the court of appeals.  This court clearly has jurisdiction over Allen's pre-termination claims of adverse action because they were filed with the DOL more than a year before she brought this action.  Accordingly, they fall within § 5851(b)(4).  But Allen's termination claim was just filed with the DOL in March, 2009.  If the DOL acts on the termination claim and issues an order, an appeal of that order would bypass the district court and go straight to the court of appeals.

Ideally, Allen's pre-termination and termination claims would be heard together in one action.  But, unfortunately, the provisions of the ERA make that difficult.  Even though the DOL did not act on Allen's pre-termination claims, this court cannot assume that the DOL will not act upon her termination claim within the one year time frame provided for in the statute.  If the DOL issues an order within the one-year statutory time period, whichever party is adversely affected by the order can appeal the order to the court of appeals.  At that time, this court would clearly not have jurisdiction over the termination claim.  Any discovery that had been done at that point could not be used in the court of appeals action.  The court of appeals decision would rely solely on the administrative record.  Because of this review process for DOL orders, an action on the same claim proceeding simultaneously with the administrative claim would be inconsistent.  The court, therefore, concludes that it is appropriate to apply the primary jurisdiction rule with

respect to Allen's ERA termination claim.

Accordingly, this court stays proceedings on Allen's ERA termination claim until March 6, 2010, one year from the date that Allen filed her complaint with the DOL.  The court finds no basis for staying Allen's state common law claims relating to her termination.  The ERA expressly provides that it is not to be "construed to expand, diminish, or otherwise affect any right otherwise available to an employee under Federal or State law to redress the employee's discharge."  42 U.S.C. § 5851(h).

The court also does not stay proceedings with respect to Plaintiff's pre-termination claims.  Because the administrative process is complete with respect to those claims, discovery on those claims should proceed.  Given the conflicting judicial review provisions in the ERA, Allen's two types of claims could ultimately be required to take separate tracks–one in this court and one in the court of appeals.  Staying Allen's pre-termination claims pending a determination by the DOL on her termination claims–either an order or inaction for a year–would unduly delay a resolution of Allen's pre-termination claims.  The court, therefore, finds no basis for staying Allen's claims based on alleged adverse actions taken against her prior to her termination.

## CONCLUSION

Based on the above reasoning, Defendant Bartlett's Motion to Dismiss is DENIED and Defendant CWI's Motion to Stay is GRANTED with respect to Allen's ERA termination claim until March 6, 2010, and DENIED with respect to Allen's state common law claims relating to her termination and her ERA claims relating to alleged pre-termination adverse actions.

DATED this 10th day of June, 2009.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge